We'll hear argument first this morning in Case No. 15-777, Samsung Electronics v. Apple, Inc. Ms. Sullivan. Sullivan, Mr. Chief Justice, and may it please the Court, a smartphone is smart because it contains hundreds of thousands of the technologies that make it work. But the Federal Circuit held that Section 289 of the Patent Act entitles the holder of a single design patent on a portion of the appearance of the phone to total profit on the entire phone. That result makes no sense. A single design patent on the portion of the appearance of a phone should not entitle the design patent holder to all the profit on the entire phone. Section 289 does not require that result. And as this case comes to the Court on the briefing, Apple and the government now agree that Section 289 does not require that result. We respectfully ask that the Court hold that when a design patent claims a design that is applied to a component of a phone or a component of a product, or to use the language of Section 289, when a design patent is applied to an article of manufacture within a multi-article product, we request that you hold that Section 289 entitles the patent holder to total profit on the article of manufacture to which the design patent is applied, and not the profits on the total product. Kennedy, The problem is, is how to instruct the jury on that point. Both parties, not the government, both parties kind of leave it up, and they say, oh, give it to the jury. If I were the juror, I simply wouldn't know what to do under your test. My preference, if I were just making what a sensible rule is, we'd have market studies to see how the consumer, the extent to which the design affected the consumer, and then the jury would have something to do that. But that's apportionment, which run headslong into the statute. You can't really have apportionment. So it seems to me that you leave us with no one choice is to just have a de minimis exception, like the cup holder example that's in the car, maybe the boat windshield, which is a little more difficult, and just follow the words of the statute. But it seems to me neither side gives us an instruction to work with. One thing is to leave it to the jury. The other thing, if I were the juror, I wouldn't know what to do under your brief. Your Honor, we do not propose a test that simply leaves it to the jury without guidance. The instruction we proposed and that was rejected by the district court appears in the blue brief at page 21. And what we would have told the jury is that the article of manufacture to which a design has been applied is the part or portion of the product as sold that incorporates or embodies the subject matter of the patent. So, Justice Kennedy, our test is very simple. We take the case. Kennedy, if I'm the juror, I just don't know what to do. I'd have the iPhone in the jury room. I'd look at it. I just wouldn't know. Your Honor, we respectfully suggest is that there are two parts to the test for what constitutes an article of manufacture. And to be clear, I'm now stressing our article of manufacture argument, not the causation argument we gave as an alternative. As the case comes to the court, all we ask is that you rule in favor of us an article of manufacture. And, Justice Kennedy, the statute tells us what to look at. Kagan, could I really quickly make sure I understand that? In other words, you're saying we should only look to what an article of manufacture is and not your other argument that there should be apportionment as to any particular article of manufacture? That is correct, Your Honor. We are pressing here, as all you need to resolve the case, that a jury should be instructed that total profit must be profit derived from the article of manufacture to which the design has been applied. And, Your Honor, the statute does support our test, because the statute asks us to look at the article of manufacture to which the design has been applied. And what is that in this case? Your Honor, in this case, it is there are three patents. The D-677 is on the front face of a phone, the rectangular, round-cornered front face of a phone. In the D-087, it's also the rectangular, round-cornered front face of the phone with certain aspect ratio and corner radii. In the D-305, it is the display screen on which the graphical user interface appears. So to answer Justice Kennedy's question, the jury should have been instructed either with our instruction, Instruction 42.1 would have said to the jury, I'm giving you guidance. There's an article of manufacture here, but it may be less than the entire phone. The article of manufacture may be a part or portion of the phone. And you should look at two things, Your Honor. You should look at the patent. And, Justice Kennedy, with respect, you shouldn't just look at the phones in the jury room. You ought to look at the patent. Because, Justice Ginsburg, the patent is going to be the best guide to what the design is applied to in many, many cases, as in this case. Sotomayor, you seem to be arguing, as when you opened, that as a matter of law, you were right. And I don't see that as a matter of law. I believe that your basic argument, everyone's in agreement, that the test is an article of manufacture for purposes of sale. But I am like Justice Kennedy, which is, how do we announce the right test for that? Because the phone could be seen by a public, a purchasing consumer as being just that rounded edge, slim outer shell. That might be what drives the sale. I don't know. Sotomayor, certainly your expert didn't tell me how to figure out the component part. I don't know where in the record you would have enough to survive your argument. So, Your Honor, let me back up and restate the test, the burden, and the evidence. Now, the test, and I want to agree with Your Honor, to be clear, we say that what  It is wrong as a matter of law to hold that the entire product is necessarily the article of manufacture from which you measure total profit. That's wrong as a matter of law. But we did not argue, Your Honor, that the test has to hold that we're right on the article as a matter of law. It's a question of either fact or, as you said in Markman, a mongrel question of law and fact. And why does it involve both? Because we know that district courts look at patents. You assign them that task in Markman, and they perform it daily. And when they look at a patent for claim construction, we're asking for part of the test to be very similar. The district court can look at the patent and say, oh, this is Apple's front face patent. This isn't one of Apple's 13 other patents on other parts of the phone or Apple's other patent on the design of the entire case. This is the front face patent. Ginsburg. Then how do you – how would you determine the profit attributable to the relevant article of manufacture? Three ways, Your Honor. First, through ordinary accounting that would look to the cost of goods sold in relation to revenues for the relevant component. You could look if a company buys the component from an original equipment manufacturer, you would look to their profit margins and apply that. If, as sometimes happens within a company, one division makes the glass front face and another division makes the innards of the phone, you would find out the transfer pricing between the divisions. So we would watch the – So we find out the production cost, if a billion dollars were spent on the inner parts and 100 million was spent on the face, then it's a 10-to-1 ratio? That's absolutely right, Your Honor. Apple didn't – So you have expert testimony on all of that? Yes, Your Honor. You would, and you would – but that's just one way. Suppose you had a case where it's a stroke of genius design. In two days, they come up with a design. Let's assume the Volkswagen Beetle analogy that some of the briefs refer to. Suppose the Volkswagen Beetle design was done in three days, and it was a stroke of genius, and it identified the car. Then it seems to me that that's quite unfair to say, well, we give three days' profit, but then it took 100,000 hours to develop the motor. Well, Your Honor, here's what we would do with the Beetle. I mean, that's what – it seems to me that that's what you would be arguing. It's not, Your Honor. What we would – to answer Justice Ginsburg's question, there are three ways Apple could have, but did not even attempt, to prove the total profit from the relevant article of manufacturers here, the front face or the display screen. One could have been accounting. One could have been consumer demand evidence, Justice Kennedy, as you suggested. Apple could have said, well, people really like the front face disproportionately to all the other parts of the phone. So they could have used consumer survey evidence to prove that. But the – and so accounting evidence or indirect evidence through consumer survey. But, Your Honor, as to the Beetle, we concede that the total profit from the article of manufacture may sometimes be a substantial part of the total profit on the product. Let's take the Beetle, or let's take a cool, shark-shaped exterior body on a car like the Corvette. It may be that the article of manufacture to which the design patent is applied is just the exterior body of the car. But it may be that nobody really wants to pay much for the innards of the Corvette or the Beetle. They want to pay for the cool way it looks. If that's so, it should be open to the patent holder to prove that the bulk of the profits come from the exterior of the car. Alito, is there any difference in practical terms between that and your causation argument or apportionment? Yes, Justice Alito. What is the difference? The difference is we concede under article of manufacture that the holder of the patent gets profit from the article, even if the profit does not come entirely from the design. Let me give you an example with a phone's front face. Consumers may value the front face because it's scratch-resistant, because it's water-resistant, because it's shatter-proof. We're going to give the patent holder under our article of manufacture test all the profits for the front face, even if it includes profit from those non-design features of the front face, whereas our pure apportionment test or pure causation test would limit the profits to the profits from the design parts rather than the functional parts. So that, Your Honor, that's a little bit over-inclusive. We're giving a little bit more with article of manufacture than we do with a pure causation test, and plaintiffs should be happy for that. But the reason we think it's consistent with Congress's purpose, Your Honor, is that what Congress was trying to do was provide a rule that gives design patent holders total profit from the article of manufacture. That's a little bit over-inclusive. Because if you get total profit on the rugs that were at issue in the Dobson cases, you'll get a little profit from the design, and there will be a little extra that you're getting, perhaps, from the fiber or the weave. We think Congress was entitled to exercise its fact-finding power to say that it is appropriate as a matter of causation to say that design causes value in a single article product, like a rug. Sotomayor, I look at this record, and they were claiming the profits on the whole phone. If you read the Federal Circuit's decision, they were saying people buy or bought this product, mostly, this was their argument, to the jury, and it sold the Federal Circuit because of the look of this phone, that, you know, all smartphones basically function the same, people don't really put much value on the innards. This is what they were arguing, and they put on an expert that gave total profits. If the jury credited them, could you, and you were properly, it was a properly instructed jury, could you overturn that finding? Sullivan-Dreeben, Your Honor, let's go back to the proper instruction. The jury was not properly instructed here. Sotomayor, I accept that, Ms. Sullivan. I'm asking you. Sullivan-Dreeben, Two answers, Your Honor. If the article of manufacture was the entire ornamental appearance of the phone, and Apple does have a patent on the entire outside of the phone, why didn't they assert it here? Because the entire outside of a Samsung phone does not look substantially similar to the entire outside of a Samsung phone. The reason why design patentees carve the product up into multiple partial design claims is so they can make a narrow infringement argument and find a little sliver of the phone on which infringement can be found, and it's inappropriate to give total profit when they do that. So, Your Honor, if there had been a design patent on the entire case, then yes, absolutely, Apple could have tried to get total profit on the entire case. Sotomayor, you're saying a properly instructed jury on the evidence presented in this case could not have found for Apple. That's absolutely correct, Your Honor. That is very much our position. Sotomayor, besides the jury instruction, what was the legal error? The legal error was in the jury instruction. I said besides a properly instructed jury, could they have found in favor of Apple on the evidence presented? They could not, Your Honor, because there was not. And so what besides the jury instruction, because I'm assuming that a proper instruction was given, what would have been the legal error? There would have been no reasonable jury could have found on this record that the entire product was the article of manufacture to which the design has been applied. Two reasons. One, design patents cover ornamental appearance. They cannot, by definition, cover the innards of the phone. So the functional innards of the phone cannot be part of what is claimed by the design patent. Sotomayor, the design patent for a Volkswagen doesn't cover the innards, but you just admitted that a jury could find its – could find that the consumers and others would perceive the Volkswagen to be a Volkswagen by its looks only. But, Your Honor, we're talking about design patents, not trademark or copyright. There's no requirement of consumer confusion here on the district court. I don't disagree with you, but – But, Your Honor, let me answer your question as precisely as I can. Just because you can show that most of the profit comes from the Beetle exterior does not mean the car is the article of manufacture. There's two steps here in our test. First, determine what is the article of manufacture. Then, second step, determine the quantum of damages, quantum of profits in this case, from that article. Under your hypo, what if Apple got almost all its profits from the exterior case, people were indifferent to whether they could read their e-mail, navigate, take photos or any other functions. If you could prove that, it's a counterfactual that couldn't happen. But if you could prove that, as in the Corvette or the Beetle hypo, then the total profit from the article of manufacture could be a substantial portion of the total product on the profit. That's not this case. Ginsburg. Did Sampson at the trial propose basing damages on profits from an article less than the whole phone? Six times, Your Honor, and we were rebuffed every time. At the – in the jury instruction – sorry. At the – before the trial began, we submitted a legal brief. It's docket 1322. We said very clearly, article of manufacture is less than the total phone, and profits should be limited to the profit from the article. We said again in the jury instructions, and here I would refer you respectfully to Joint Appendix 206, 207, and to the result of that on Petition Appendix 165A. What happened is we went to the court. We said, please listen to us about article of manufacture. You can only get the total profit on the article. The district court said, no, I already said no apportionment back in the Daubert. Because I said no apportionment, she shut us out of both theories. The district court shut us out of article of manufacture as the basis for total profit, and it shut us out of causation or apportionment, which we don't press here. So that's twice, our legal brief, our charge conference, and then again in our 50A and the key rulings on 50A at the close of evidence, we again said article is separate from – from apportionment, and the article here is less than the phone. At 197, we said, at JA – I'm sorry, at JA 197, we again said article is less than the phone, and in the 50B at the close of the first trial, we again said article is less than the phone. Second trial happens on certain phones. Again, in the 50A and the 50B, the trial court says again, I have ruled that there's no apportionment for design patents. You cannot talk to me about article of manufacture. We tried over and over and over again to get the article of manufacture theory embraced, and we were rejected. Now, why does that matter, Your Honor? Because there was evidence in the case from which a reasonable, properly instructed jury could have found that the components were the front face, the front face, and the display screen. And the evidence came out of Apple's own witnesses, which we're certainly entitled to rely on. Your Honor, Apple's own witnesses again and again said, what are you claiming? And when the witnesses got on to talk about infringement, they didn't say the whole phone, the look and feel. They said, we're claiming a very specific front face, and by the way, ignore the home button. We're claiming a very specific front face and surrounding bezel, and by the way, ignore everything that's outside the dotted lines. And if I could just remind you that we've reprinted the patents for you to see, and they may look like an iPhone on page 7, which is the D-677. They may look like an iPhone in the D-087, which is in Blue Brief at 8, but the claim is not for the iPhone. The claim is for the small portion of the external appearance of the phone that is inside the solid line. Apple disclaimed everything outside the solid line. It disclaimed portions of the front face with dotted lines. And, Your Honor, the question for the jury was not, did people think that the look and feel of an iPhone was great? The question for the jury was, did the very small portion of a smartphone that Samsung makes look substantially similar to the very small portion of the patent claim? Now, that, Your Honor, there was no basis in this corresponds to the entire profit from those articles. What Apple should have done is done either of the two things we discussed earlier, accounting evidence about revenues minus cost of goods sold on the components, or it should have done consumer survey evidence like our expert did. Alitoso, the Solicitor General has proposed a test with four factors to determine the article question. Do you agree with those? Are there others you would add? Your Honor, I'll answer briefly, and then I'd like to reserve my time. We see we like the Solicitor General's test. We propose a briefer test that we think is more administrable. We propose that you look to two factors, the design in the patent and the accused product. We think our test is more administrable, and it can often be done, Justice Kennedy, by judges, as they do in Markman, who will then instruct the jury and give them guidance. And I'll be happy to explain further on rebuttal. Thank you very much. I'd like to reserve the balance of my time, Mr. Chief Justice. Roberts. Thank you, counsel. Mr. Fletcher. Fletcher. Thank you, Mr. Chief Justice, and may it please the Court. This case presents two related questions about the scope of the remedy that's available for design patent infringement under Section 289. And if I understood my friend Ms. Sullivan's presentation correctly, the parties are now in agreement about both of those legal questions. Just to summarize briefly, first, the court of appeals correctly held that Section 289's provision for an award of total profits means that the patent holder can recover all of the profits from the sale of the infringing articles of manufacture, and not just the portion of the profits that the patent holder can prove was caused by or attributable to the design, as opposed to other features of the article. But second, we read the court of appeals' opinion to have held that the relevant article of manufacture for which profits are owed is always the entire product that the infringer sells to its customers. And we think that's a mistake, and we understand all parties to agree with that now. Instead, the relevant article of manufacture to which a patented design may be applied will sometimes be a part or a component of a larger product sold in commerce. And when that is the case, all parties now agree that the patent holder is entitled only to the profits from that infringing article, and not to all the profits. Ginsburg. Ginsburg. When the component, when the article of manufacture isn't sold apart from the entire product, how should the judge charge the jury on determining the profit attributable to the infringing article? So we think there would be two factual questions in a case where that's disputed. The first one would be what is the relevant article, and there may be a dispute on that, as there is in this case. The second question, once the fact finder identifies the relevant article, is the question that you asked, which is how much of the total profits from the device are attributable to the infringing article. Sotomayor, the first step, how do you figure that out? May he complete his answer to my question? So, Justice Ginsburg, on the second step, we'd urge the Court not to speak to that in a lot of detail, because it hasn't been briefed in this case. This case sort of stopped at the first step. But we think that courts could sensibly look to the way that courts have handled other analogous questions. And I'd point to two areas of law where that's happened. The first are utility patent damages under the Patent Act before 1946 permitted an award of the infringer's profits. And in those cases, very often a patent would apply to part of a larger product sold in commerce, and the fact finder would say, you're entitled to the profits that are attributable to the infringing part, but not the whole machine. Kennedy, Justice Ginsburg's question. Is that your answer to hers adequately summarize the test that you propose at page 9 of your brief, relevant considerations include? So I think the test that we propose at page 9 goes to the first of the two questions that I was speaking to, which is what's the article of manufacture to which the design has been applied. Once the fact finder makes that judgment, that's the test that we proposed, and that's I think I took to be Justice Sotomayor's question. I understood Justice Ginsburg to be asking, once the fact finder decides that the relevant article is, say, the windshield on the boat or the cup holder on the car, how do they separate out the part of the profits that are attributable to that component from the whole. And as to that question, we haven't briefed it in a lot of detail, but I was trying to explain to Justice Ginsburg that there are analogous problems that courts have confronted in other areas of law. One was utility patent damages, as I described. Another one is discussed at some length in this Court's decision in the Sheldon case under the Copyright Act. That was a case where the copyright was on a script or a plate. Kennedy Would expert witnesses be called on order to show part one or part two or both? I would think very often both. And what would those expert witnesses, who would they be, what would they say? So I think it will depend on the circumstances of the case. I think in this case, I think someone familiar with the industry, someone who had worked in the industry either at a manufacturer of a smartphone company or someone who is familiar with the market for smartphones and who could speak to, on the first question, how smartphones are put together, how they're manufactured, how they're used by the users, the extent to which the components of a smartphone are separable. And then on the second question, the one that Justice Ginsburg was asking, I think they would, the experts would probably be speaking or could be speaking to some of the issues that Your Honor raised in your question to Ms. Sullivan, which is things like consumer surveys. To what extent do the various components of a smartphone drive consumer demand and contribute to the value of the phone? Roberts, one of the things that was mentioned was cost in terms of that. I don't understand how that helps on this question. It would seem to me the higher the cost, the less it contributed to profits. So I think, Mr. Chief Justice, it will depend on the case. Sometimes you might try to build up the share of the profits from the bottom up by saying what's the cost of each of these components, and then what share of the revenue is attributable to each of these components. And then you'd say this component is, you know, 10 percent of the cost and 20 percent of the revenue, and we do a bottom-up calculation and try to do it that way. Courts haven't always done that. Sometimes that won't be feasible. Sometimes instead they've done a more impressionistic approximation and said the total profits on this product are, you know, $10 million, and we think that the component at issue here, based on expert testimony, is responsible for a quarter or 25 percent of profits. Roberts, based on expert testimony, what would they be talking about? So I think the Sheldon case that's cited on page 27 of our brief from this Court that was a Copyright Act case but that discussed these problems sort of generally discussed how you apportioned the profits from a movie that are attributable to the script as opposed to the actors or the directors or other things. And they had experts who were familiar with the industry and who said the script is important, but really a lot of the value, and particularly for a movie like this, comes from other things. And there were various expert testimonies that gave varying percentages. And the Court ended up saying that the court below had awarded 20 percent of the total profits from the movie, and this Court affirmed that award and said that's a reasonable approximation. We're never going to be able to get to certainty, but on these sorts of profits questions and these sorts of remedies questions, a reasonable approximation is good enough, and it's certainly better than awarding all or nothing. And courts have been able to come to those reasonable approximations by using expert testimony in some of the ways that we've discussed. Kagan. And just a flash, Mr. Fletcher, could you speak about this VW bug example? Because as I understood Ms. Sullivan's answer, she said, well, that distinctive appearance, that distinctive shape, it's just, it's still, the article is only the body of the car. And you say no, there's a real question as to whether it is being, the design is being applied to the car itself. So how would you go about thinking about that question, or how is a fact finder supposed to, and under what instructions? Fletcher. So we think the basic question for the fact finder is what's the article of manufacture to which the design has been applied? We think the fact finder should bear in mind this Court's observation in Gorham, its 1871 first design patent case, that the, what a design is, is it's the thing that gives the distinctive appearance to an article of manufacture. And the point we're making with the VW bug example is that in some cases, that's going to be very easy. If the patented design is for a refrigerator latch, no one is going to think that the latch gives the distinctive appearance to the entire refrigerator. Kagan. Right. But let's talk about the hard case. Fletcher. Right. So the hard case is like the bug, where one could reasonably say that it's either the body or the car. Then we've given the Court four factors, and we think the fact finder or a jury, if the jury is the fact finder, ought to be instructed on those factors. And so we say you should compare the scope of the patented design as shown in the drawings in the patent, how prominently that design features in the accused article, whether there are other conceptually distinct innovations or components in the article that are not part of or associated with the patented design, and finally, the physical relationship between the patented design and the rest of the articles. Kennedy. If you were a juror, how would you decide the Beetle case, or what experts would you want to hear? Fletcher. I would want to hear, as to the article, what's the article. Kennedy. I shouldn't have given you that second option. Fletcher. I do think it's a factual question. I do think you would want to hear from experts who can speak to the question of how is the Beetle put together and what other parts of the Beetle. Roberts. How is the Beetle put together? I mean, it's put together like every other car. I mean, I don't see how that's going to tell you whether the shape of the body is distinctive or not. Fletcher. Well, I think you'd also want to know, so to put it in terms of our four factors, that the scope of the claim design covers the whole article, but not the interior of the car. There are design features on the interior that the driver sees that aren't the body of the article. As to the second factor, how prominently does the design feature, I think that's one that cuts in favor of finding that the design does cover the whole article. Then the third one is conceptually distinct innovations. And I think that one cuts the other way. There are going to be lots of other features of the car or innovations in the car, the engine, the steering system, things like that. That's an area where you might want to hear expert testimony. Sotomayor. That's the first part of the test. Fletcher. Correct. Sotomayor. That's the article of manufacture. So now take the second part of the test and apply it to the bug. Fletcher. So supposing that we've decided that the bug, the relevant article in the bug is just the body of the bug. Sotomayor. Exactly. Fletcher. Then I think the question is, the best way to determine that, at least that I can think of right now, would be consumer surveys addressed to, to what extent are people who buy bugs making their purchasing decisions based on the look of the car, and to what extent are they instead valuing other things like that? Kagan. So you think that that question is not relevant to the first question. In other words, suppose I think that people who buy VW bugs buy them because of the look of the car. Fletcher. Yes. Kagan. But you think that that's only relevant at question 2 rather than at question 1, which is the question of whether it's the body or the whole car that the design is being applied to? Fletcher. I do. I think that's the statute, the way the statute reads. It says you get profits from the article of manufacture. And so logically, I think the way to approach it would be identify the article and then let the patent holder make the argument that even though the article may be just a part of the product as sold, you know, here maybe it's just the case or the front face, really that's what sells it. And so that test still lets the patent holder in a case where it is the design of the article that's selling the whole product, still recover a very substantial portion of the profits, but just in a different way. Alitoson This hypothetical is not helpful to me because I can't get over the thought that nobody buys a car, even a Beetle, just because they like the way it looks. What if it, you know, it cost, I think, $1,800 when it was first sold in the United States. What if it cost $18,000? What if it's got 2 miles per gallon? What if it broke down every 50 miles? So if that is a real question, if it is a real question whether the article of manufacture there is the design or the entire car, it gives me pause about the test for determining what is the article of manufacture. Well, I think those things can be taken into account at the second step of the test. If you decide that the relevant design, the relevant article of manufacture is the body of the car, but for all of the reasons you just pointed out. But what if you were saying it's an open, it would be a difficult question. You would have to apply numerous factors to determine what is the article of manufacture  Alitoson Well, then I think if you are skeptical about that, I think our test for article of manufacture also lets some of those considerations play into that test, because it gets to whether there are other conceptually distinct innovations or other components of the product unrelated to the design. Robertson Thank you, counsel. Alitoson Thank you, Mr. Chief Justice. Robertson Mr. Waxman. Waxman Thank you, Mr. Chief Justice, and may it please the Court. Before I address the Court's many questions initiated by Justice Kennedy about what should the jury be instructed under what we in the government believe to be the relevant question, that is, the factual test of whether the relevant article of manufacture is the article as sold or a distinct component of it, I think it's very clear to address the questions that Justice Ginsburg and Justice Sotomayor asked and Ms. Sullivan's response to what actually happened in this case. There is no, whatever you determine the right instruction should be, there is no basis to overturn the jury's damages verdict in this case. There were two trials below. In neither trial did Samsung, either in argument, statement, or witness testimony, ever identify for the jury any article of manufacture other than the phones themselves. In both trials, Samsung's expert witness, Mr. Wagner, calculated total profits under 289 only on the phones themselves, and thus there is no reasonable juror in these on anything other than the phones, unless this Court holds them. Ginsburg. Is that because the district judge limited them? Absolutely not. What happened was we put in our initial papers saying, and there's a pretrial statement that the parties have to file, saying these are the phones are the things the phones were infringed, the phones are the things that were infringed for purposes of sale, and here is what our evidence is on total profits from the phone. It's a disagreement on this point. So why, if we have a hard-enough question, trying to figure out what the standard is, now, why can't we just ask the lower courts to listen to your arguments and theirs and work it out? Justice Breyer, this is not a difficult --" the record in this case is not difficult. You don't think it's difficult, but they think it's difficult. In fact, they think it's easy on their side. So if I go through and come to the conclusion at least that each side has a good argument, under those circumstances, why don't we focus on the question that is of great importance across industries and leave the application of that and whether it was properly raised to the lower courts? Justice Breyer, if this were difficult, it would be entirely appropriate for this Court simply to announce what the law is, which I think there is a great need for this Court to do, and we're not suggesting that it wouldn't --" that it isn't necessary for the Court to do it. This is a case very much like Globaltech, when the --" you found that the lower court had applied the wrong standard for intentional infringement and then found that the record even under the correct higher standard, the record admitted no other conclusion. What's so easy about this case is that they never identified to the jury in either case any article of manufacture other than the phone, and all of their evidence, Justice Breyer, was calculated based on the total profits to the phone. They even --" Breyer, I get your point. I'll read it, and I'll --" Thank you. But I have a question on the general issue, which I think is tough. And the general question that I have is I have been looking for a standard. Now, one of the standards, which are all quite close, the parties actually in the government are fairly close on this, but is in a brief for the Internet Association, the software industry. And you know that brief that I'm talking about, and Facebook and some others. Okay. What they did is they went back into history. They have a lot of different cases which they base a standard on, and they come to the conclusion, which is a little vague, but that the design, where it's been applied to only part, it's on page 23, of a multi-component product, and does not drive demand for the entire product, the article of manufacture is rightly considered to be only the component to which the design applies, and only profit attributable to that component may be awarded. Now, really, to understand it, you have to have examples, but antitrust cases are very hard to understand, and rule of reason, and people do use examples. And so that kind of standard, with perhaps examples to explain it to the jury, you know, wallpaper, you get the whole thing. But a Rolls-Royce thing on the hood, no, no, no. You don't get all the profit from the car. Okay. Now, why not? Waxman. Okay. I understand your question, and I just want to bookmark the fact that I have not yet had a chance to answer Justice Ginsburg's question. Breyer, Justice Ginsburg, at no the only thing that Samsung was precluded from doing, and this happened in the Daubert ruling with respect to their expert report, Mr. Wagner's report, was they were he was not allowed to present evidence about that, about the value of design to the total product as a whole. That was apportionment, Judge Coe said. He wanted to he calculated total profits based on the phone, and his report then said, well, but I believe that only 1 percent of the value of the phone is due to the design, or the design of the iconic front face of the phone. And that she wouldn't allow him to do because that was apportionment. The question, the only issue with respect to article of manufacture that Samsung ever made in either trial or in the court of appeals was that as a matter of law in a multi-component product, the article of manufacture must be the portion.  And in the jury, they did at they did propose a jury instruction 42.1 which directed the jury that that's what it was supposed to do. It also directed the jury to apportion, and the judge didn't approve it. Now it just so happens that they preserved no relevant objection to the file of that issue. Roberts, we were spending an awful lot of time on an issue about what was raised below, what wasn't raised below, what was waived below, what wasn't waived. Maybe it's a good time to turn to Justice Breyer's question. I would be very happy to do that. Justice Breyer, the – there is no question that in an appropriate case, the jury can decide whether the article of manufacture to which the design is applied and to which it provides a distinctive and pleasing appearance could either be the article that's actually sold to consumers, that's bought by consumers, or it could be a component of it. In the case of a wall hanging, there's really not much dispute. In the case of the cup holder, there really isn't much dispute. It is a question of fact for the jury. We believe that the four factors that the Solicitor General articulated would be appropriate factors to consider. I think that in a case in which the jury ---- Kennedy, what is the question of fact? Here is the question. The article to which the law applies? What is the question? Here is what I would say. In a case in which the jury heard evidence as to competing articles of manufacture, as to what total profits should be applied to, the jury would be told, if you find infringement, total profits are awarded on the article of manufacture to which the purpose of sale and to which it gives peculiar or distinctive appearance. You may determine that the article of manufacture is the entire product or a distinct component of that product. In making that determination, you may consider, and again, this would depend on the evidence in the case, among other factors, I would include the Solicitor Generals, and there may be other things. For example, most importantly, the identity of what it is that is typically consumed by purchasers, whether the patented design is likely to cause consumers to purchase the infringing product, thinking it to be the patentee's product. Maybe I'm not grasping the difficulties in the case. It seems to me that the design is applied to the exterior case of the phone. It's not applied to the all the chips and wires, so why are you going to do that? Waxman. Waxman. That's absolutely right. And, you know, of course, you can't get a design patent on something that the consumer  And yet Congress decides to do that. Roberts. So you should, there shouldn't be profits awarded based on the entire price of the phone. Waxman. No. The profits are awarded on the article of manufacture to which the design is applied. I think there was the outside, the case part of it. Well, maybe and maybe not. I think the difficulty here is that it's important to understand that design is not a component, and the patented design is not the article of manufacture. The patented design is something that's applied to an article of manufacture for purposes of sale. Okay. Well, these little, the chips and all are articles of manufacture, right? How is the design of the case applied to those chips? The same way that, I mean, if you look at, for example, in the early days, when the patent, when the design, when design patents were first permitted by statute in 1842, the first hundred, of the first hundred patents that were issued, 55 of them were for stoves and furnaces and steam engines and things like that. Congress, when Congress said that you are entitled, you know, in response to the Dobson cases, that as an alternative remedy, if there is infringement of a design, which, by the way, does not happen innocently, when there is infringement of a design, the patentee may choose an alternative remedy, which is essentially to have the jury put him or her in the shoes of the infringer, that is, to, to disgorge the profits from the article to which the design was applied. There's no doubt that the steam engine had plenty of working components. But a design is not a component. A design is applied to a thing. And the jury has to decide, in the case of the VW Beetle, that you have either a cupholder or a patented hubcap or the iconic shape of the car. I think that a jury would very well conclude that because someone who sees the iconic shape of a VW Beetle and buys it thinks that they are buying the Beetle. That is, after all, the reason why the infringer copied it. We know from Samsung's own documents in this case, for example, that are recounted in our brief, Samsung realized that it faced what its executive called a crisis of design. And the crisis of design was reflected, the documents show, in the telephone companies saying, you have to create something like the iPhone. And a directive came out to create something like the iPhone so we can stop using losing sales. And in three months' time we have to create something like the iPhone. Sotomayor, Mr. Waxman, can we go back to the government's test? Because so far, your test has a lot of steps, but I don't know what it's going towards. Okay? They suggest two things. Article of manufacture is the article of manufacture. They have a four-part test. Do you agree with that four-part test with respect to identifying just the article of manufacture? Yes, with the following caveat only. What the factors that the jury will be told will depend on the evidence that the parties adduce. Please don't go to the record. I'm not going to the record. I'm sticking with the test. All right. That's the test. Okay. So let's assume, because it makes logical sense to me, it may not to anybody else, okay, that the Volkswagen body, not the inert, are the article of manufacture. Now, the government would say, go to the second test, which takes in some of the things that you were talking about, to figure out how much of the profits that VW makes from the bug are attributable to the shape of the car. Now, as Justice Alito said, some people don't care a whit about the shape of the car. They want just a small car. They want the car that has a certain trunk. We all buy cars for a multitude of reasons. Experts would come in and say, but it's 90 percent of the profits. It may be that the body accounts for only 10 percent of the cost of the car, but 90 percent of the profits are attributable to the shape of the car. What's wrong with that analysis? That's what I understand the government's analysis to be, that that's what a jury has to be told to do. To decide how much value the design is to the product being sold. That's the government's test in a nutshell. Waxman. Okay. So this is a test that the government has articulated here at oral argument. It has not been briefed by anybody. The issue of how you calculate total profits on something less than the whole article as sold was wrestled with, I think, best by the Second Circuit in the second piano case, where the second piano case, the Court said, okay, well, the first part of the test, how do you determine what the article of manufacture is, hasn't provided a lot of difficulty. The real difficulty is in calculating 100 percent of the profits from that article of manufacture. The few courts that have addressed this that I've seen it have done it in a way that I think probably makes the most sense and is the least difficult conceptually, which is to say, okay, what were the costs of producing that article, that particular subcomponent, and what was the company's profit margin on the product as a whole applied to that little component? Now, the difficulty with that, I mean, I think that's what courts have generally done. And what it underscores, and in appropriate cases it may be appropriate, like the cupholder example, but what it underscores is the very concerns of the government. Sotomayor, do you endorse that part of the government's test? How we measure it, you're saying, hasn't been briefed adequately. The government is saying the same thing. But is conceptually, is that right? Conceptually, it is correct that under Section 289, the patentee is entitled to the total profits on the sale of the articles of manufacture to which the design has been applied. That is relatively straightforward when, in a contested case, the jury concludes that the article of manufacture is the product that's sold. It is more complicated when the jury concludes that the relevant article of manufacture, as was the case in the piano cases, where customers could choose an array of cases in which to put the piano mechanism, it is more difficult to figure out total profits from the manufacture and sale of the case. But the decided cases that I have seen have looked at the question, what was the manufacture or what were the direct costs associated with producing the relevant piano cases, and what was the profit margin on the piano as applied to that. And may I just add one other point, which I think is still on track. The problem with that is that it runs headlong into the kind of thing that Congress was concerned about in 1887 when it passed the Design Patent Act, because the concern was that counterfeiters and copyists would simply — if the only penalty, if the only compensation was something that could be viewed as the cost of doing business, that is, okay, you're going to get a 10 percent margin on $2.50 for what it costs to produce this little component, there would be no deterrence to what Congress deemed to be an emergency. Yes, Justice Kagan. Kagan. Kagan. And let's take a case, and I think that the VW example is a good example for this reason, where the thing that makes the product distinctive does not cost all that much. There's not been a lot of input. Somebody, just some engineer or some graphic artist or whatever, woke up one day and said, I just have this great idea for an appearance. But that's the principal reason why the product has been successful. I mean, the car has to run, and it has to do all the other things that cars do, but the principal reason why the car has been successful has to do with this particular appearance, the design. As I understood the government, that does not come into the first inquiry. That does not come into the question of what is the article. It only comes into the second inquiry, which is how much of the profits are attributable to that article. Do you agree with that? I don't think that that — I don't agree with, if that is the government's test, as you've articulated it, I wouldn't agree with that. I think that the government's — if you look at the government's factors, you know, one factor is the relative prominence of the design within the product as a whole, and the government says that whether the design — in other words, whether the design is a significant attribute of the entire product affecting the appearance of the product as a whole would suggest that the article should  be assessed is the physical relationship between the patented design and the rest of the product. In other words, as the government's brief says, can the user or the seller physically separate it, or is it manufactured separately? Another factor is whether the design is conceptually different from the product as a whole, as, for example, a design on a bookbinding is different from the intellectual property reflected in the copyrighted material in the book. Those — we agree with all those factors as relevant. But I do think, directly, you know, speaking to the question that you raised, the first factor that I mentioned, the relative prominence of the design within the product as a whole, is in essence asking, and it is a relevant question in determining the article of manufacture, whether the patented design is likely to cause the consumers to purchase the infringing product, thinking it to be the patentee's product. So in the VW Beetle example — I can't bring myself to call it a bug. In the VW Beetle example, nobody would look at the cupholder that was similar to what was in a VW Beetle that was in a Jeep or a Porsche and say, oh, this must be a VW. But somebody who looked at the exterior of a Jeep that copied the iconic side profile of the VW Beetle might very well say that. And a jury would take that into account. Kennedy, it's the approach that you're discussing fairly described as apportionment. Or is that a bad word? That is a really bad word. And if there's a — I mean, in some verdicts — But what other — what word would you use to describe your approach? What is the thing, the article of manufacture, to which the design is applied for purposes of sale in order to give it a distinctive and pleasing appearance? Apportionment is what their expert, Mr. Wagner, tried to do in his report, saying the total profits on the phone are X hundreds of millions of dollars, but I find that only 1 percent of consumers buy phones because of the front face of the — of the phone, either off or on. But once you've identified the relevant article, then it seems to me necessarily what you're doing is apportioning profits. I just don't see how we can get away from that word. Okay. So in this — yes. In this sense, Justice Kennedy, the vernacular sense of apportionment, once you — if you — if the jury answers the question at step one and says, no, no, no, the article of manufacture is the refrigerator latch or the cup holder, how do we determine total profits from the sale of that thing, you do have to engage in a kind of an apportionment that looks to how much did it cost to make the cup holder and what is the, you know, what is the profit margin for the car or the refrigerator or something like that. That, it seems to me, is the way that you would do it if you found it. So, you know, in this case, it's a little difficult to figure out what the alternative article of manufacture would be. I mean, in the trial court, even before the trial judge, they never even suggested what the article of manufacture could be for the 305 patent, the graphical user interface. And — Alitoso, and listing factors is not helpful unless the jury, or whoever the factfinder is, knows what the determination must — what determination must be made. The factors are helpful in making the determination. Now, what you just said about the article of manufacture is, it is the thing to which the design is applied. Is that — is that basically what you said? What I would tell the jury is, quoting the statute and this Court's decision in 1872 decision in Gorham, is that the article of manufacture is the thing to which the design is applied for purposes of sale and to which it gives distinctive and pleasing, attractive appearance. That's all you're trying to find out. Alitoso, but in a physical sense, that is that you can answer it easily. And that's what the Chief Justice was talking about. It's applied to the outside in a physical sense. But you mean it in a different sense, and I don't really understand what that means. Once you get beyond the pure — where is the design applied? Is it applied to the inside? No. It's applied to the outside. Well, the design, by definition, applies to the outside. It has to apply to something that you can see. Okay. So when you say what it's applied to, you're not talking about it in terms of the physical world. So what is — what are you talking about? The jury is being asked to decide, was this — if you find that this was a — that patentable design, and you find under Gorham that it was infringed, what is the thing to which that design was applied to give it a pleasing appearance? Obviously, it's not a transistor or some circuit or the software. It is applied to the phone. Now, they could, if they had, if they had wanted to, suggest it to the jury. No, no, no. The relevant thing is — It's applied to the outside of the phone. Well, it's applied — Justice — Mr. Chief Justice, it's always applied to the outside of an article. It has to be applied to the outside of an article. I — I see my time has expired. Thank you very much. Thank you, counsel. Ms. Sullivan, four minutes. Mr. Chief Justice, and may it please the Court. Justice Kennedy, Congress did not say that all apportionment is forbidden. Congress said you can't apportion the value of the design in relation to the article. We're conceding that here. What Congress did not say is that you can't segregate the proper article from the other articles that make up the product. So we can segregate article from other articles within the product. And, in fact, Section 289 requires us to do that because it allows total profit only from that article of manufacture to which the design has applied. Now, the test that we asked the Court to announce on remand, as has been discussed, it has two parts. The first is, the antecedent question is, identify the relevant article of manufacture. Sometimes that will be very easy if you do it from two main factors. What does the patent scope claim, a front face or, as the Chief Justice said, the exterior casing? And, in fact, we asked, Mr. Chief Justice, for the instruction you allude to at Blue Brief 21, we actually asked the jury to be told that where the article of manufacture is a case or external housing, that's the article of manufacture. The second question is quantum of profits. And I think Justice Kagan put it exactly right in saying that a lot of the expert determinations about how much did the Beetle exterior drive demand will come into play, as the government said, and we agree, only at the second question, what is the quantum of profits from the right article of manufacture. But, Justice Alito, you asked how similar are we to the government's test, and, Justice Kennedy, you asked if this will lead to a lot of inconsistency among juries. We think the answer to the first question can be made more consistent and uniform if we focus mainly on two factors. What does the design in the patent claim? Front face, exterior casing holding the front face, and, second, what is the product to which it has been applied? That will help judges to guide juries. We think we should have had Instruction 42.1, but in a proper case, you might decide at summary judgment that the article of manufacture is the front face, and that could be instructed to the jury. Breyer. The problem, of course, is the congressman, the whole wallpaper, even though they only want to apply it to the front. Your Honor, we can't. And that's the problem in the case. So I thought, and that's why I pointed to the brief I did point to, that history is matters here, and we're talking here about a multi-component product. That's right, Your Honor. And if you don't tell the jury that there is that distinction, I think you either disregard what Congress meant in its statute or you create the kind of absurd results that your brief is full of. So that's what I'm looking for. Your Honor, the key point is that the brief is full of absurd results. And that's why I looked at page 23 and says that seems to do it. We're fine with page 23 of the tech company's brief. And that points to why you must remand in this case. This case was tried under the improper rule of law. We tried at every juncture to get the correct rule of law adopted. And the district court said, I forbade apportionment. And we said, no, no, we're not asking for apportionment. We're asking for article of manufacture. And we were shut down over and over again on that. So you must remand and tell the nation's economy that no one can claim a partial design patent on a portion of a front face of an electronic device and come in and get the entire profits on the phone. Juries should be instructed that the article of manufacture either is the Beetle exterior or there might be, Justice Breyer, still today, there might be cases of unitary articles just like the Dobson rugs. The Gorham spoon might be a unitary article. Patent's on the handle, but nobody really cares about the sipping cup of the spoon. So we say that article of manufacture is the spoon, and if you get the profits from the spoon, that's all right. Ginsburg. Who has the burden of showing what is the relevant article? I assume in a case like this, Apple will say it's the whole phone. Justice Ginsburg, if I leave you with the most important disagreement we have with the government and with Apple, the burden is on the plaintiff. The burden is on the plaintiff to show what the article of manufacture is. Why is that? The burden is on the plaintiff to show damages. And subsidiary questions subsumed in what the damages are are also always the plaintiff's burden, as the entire market value rule in the Federal Circuit shows. With respect, we request that you remand and vacate and remand. Thank you very much, Your Honor. Roberts. Thank you, counsel. The case is submitted.